## THE TUG NO. 32.

## THE TRANSIT.

(District Court, S. D. New York. October 11, 1907.)

COLLISION—TUGS WITH TOWS MEETING—NAVIGATION IN NARROW CHANNEL.

A collision in the evening between the tows of the tugs No. 32 and Transit, each having a number of boats in tow, in the channel between the Kills near the Corner Stake Light, *held* due solely to the fault of tug No. 32, which was proceeding westward with her tow light in passing beyond Shooter's Island without ascertaining the presence of the other tow, her signal then given not having been heard on account of the wind which blew from the north and which also prevented her from keeping her light tow on the right-hand side of the narrow channel in passing.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 10, Collision, § 78.]

In Admiralty. Suit for collision.

Alexander & Ash, for libellant.

Robinson, Biddle & Ward, for the No. 32.

Armstrong, Brown & Boland, for the Transit.

ADAMS, District Judge. This action was brought by Joseph C. Fountaine, the owner of the canal boat Frank W. Fonda, to recover from the Pennsylvania tug No. 32 and the Philadelphia and Reading Railway Company's tug Transit, the damages caused to his boat while in tow of the former by a collision with a boat in tow of the latter, on the 18th of October, 1906, in the channel between the Arthur Kill and the Kill Van Kull, about 9 or 10 o'clock P. M. The No. 32 was proceeding from New York to South Amboy with a tow of about 20 boats on a hawser. The tow was in 4 tiers. Altogether it was about 850 feet long and 110 feet wide. The Transit's tow was proceeding from South Amboy to New York. It was about 100 feet shorter than the No. 32's tow but of the same width. The collision occurred in the channel, about a mile long, between Shooter's Island and the Corner Stake Light. The Transit's tow was loaded and the No. 32's light. The collision was between a boat in the Transit's last tier and the Fonda in No. 32's 3rd or 4th tier, by which the Fonda was somewhat injured. There was a strong wind blowing, about 20 miles an hour, from the northeast. The tide was flood, running towards New York, in the Arthur Kill, at the rate of from 1½ to 2 miles an hour. It became somewhat slack in the vicinity of the Corner Stake Light.

When the No. 32 reached the vicinity of Shooter's Island, she blew a signal of one blast to ascertain if there were anything beyond the island which would interfere with her navigation. This was not heard on the Transit by reason of the wind blowing the sound to the southward and westward, therefore she did not reply and the No. 32 proceeded into the stretch of water, called the Gap, and after getting there

and past Shooter's Island, she then saw a tow, which proved to be the Transit's, coming towards the Corner Stake Light. It was too late for her to avoid it in the narrow channel, about 350 feet wide, considering the wind, which forced her tow somewhat to the left side of the channel and into the collision, as stated above. She could not stop because she would thereby have lost control of her tow altogether and made matters worse.

The No. 32 sought to have a two whistle course adopted but the Transit would not agree to depart from the rule to go to the right, which was confirmed by an agreement after the failure of the No. 32 to secure an assent to her proposed course to the left.

The collision seems to have been caused by the No. 32 in venturing beyond Shooter's Island under the circumstances without knowing that the way was clear. By proper observation to the north of Shooter's Island, she could have seen the Transit coming and waited her passing there. The Transit saw a tow beyond Shooter's Island but she was coming with the tide and could not stop.

It is urged by the libellant that when she received the No. 32's signal of two blasts she violated Pilot Rule 3 in giving a cross signal instead of slowing and blowing an alarm signal. If she committed a technical fault in this respect, it did not tend in any way to produce the collision. The No. 32's two blast signal was merely an enquiring one and when she found that the Transit would not agree to it, a one signal course was adopted by both sides. The trouble was that the No. 32 was not able on account of the wind to fulfil this agreement.

There will be a decree for the libellant against the No. 32, with an order of reference. The libel will be dismissed as against the Transit.